IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICHARD SNYDER,

    Petitioner,                      No. 2: 11-cv-3064 JAM KJN P

    vs.

GARY SWARTHOUT,                   ORDER AND

    Respondent.                FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

        Petitioner, a state prisoner proceeding without counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, together with an application to proceed in forma pauperis.

        Examination of the in forma pauperis application reveals that petitioner is unable to afford the costs of suit. Accordingly, the application to proceed in forma pauperis will be granted. See 28 U.S.C. § 1915(a).

        Petitioner was convicted of attempted voluntary manslaughter, assault with force likely to produce great bodily injury, and torture. Petitioner was also convicted of personally inflicting great bodily injury in committing each offense. Petitioner received a life sentence based on the torture conviction.

In the instant action, petitioner challenges the 2010 decision by the California Board of Parole Hearings ("BPH") finding him unsuitable for parole. This was petitioner's third suitability hearing. A copy of the transcript from this hearing is attached as an exhibit to the petition.

Petitioner raises the following claims. First, petitioner alleges that he was denied his right to a neutral and detached decision maker. (Dkt. No. 1 at 45 of 180.) Second, petitioner alleges that he was denied his right to a full and fair hearing because the standards used by the BPH to find him unsuitable were not specified by statute or regulation. (Id. at 52.) Third, petitioner alleges that the BPH violated his First Amendment rights by refusing to accept his views regarding the religious steps of Alcoholics Anonymous ("AA") and Narcotics Anonymous ("NA"). (Id. at 59.) Fourth, petitioner alleges that BPH's application of California Penal Code section 3041(b)(3) to set his next suitability hearing in three years violated his right to due process because no such section exists in the California Penal Code. (Id. at 61.)

After reviewing the petition and attached exhibits, the undersigned finds that petitioner's claims are without merit. For the reasons set forth below, this action should be dismissed. See Rule 4 of Rules Governing Section 2254 Cases (court may dismiss petition if it plainly appears that the petitioner is not entitled to relief).

II. Discussion

   A. Claim One

Petitioner alleges that he was deprived of his right to a neutral and detached decision maker.

California inmates have a due process right to parole consideration by neutral, unbiased, disinterested decision makers. O'Bremski v. Maass, 915 F.2d 418, 422 (9th Cir. 1990). Because parole board officials perform tasks that are functionally comparable to those performed by the judiciary, they owe the same duty owed by the judiciary to render impartial decisions in cases and controversies that excite strong feeling because the litigant's liberty is at

1  stake. Id.

2  Fairness requires an absence of actual bias and of the probability of unfairness.

3  Id. at 136.  Bias may be actual, or it may consist of the appearance of partiality in the absence of

4  actual bias.  Stivers v. Pierce, 71 F.3d 732, 741 (9th Cir. 1995).  A showing that the adjudicator

5  has prejudged, or reasonably appears to have prejudged, an issue is sufficient.  Kenneally v.

6  Lungren, 967 F.2d 329, 333 (9th Cir. 1992).

7  However, there is a presumption of honesty and integrity on the part of decision

8  makers which may be overcome by evidence of a risk of actual bias or prejudgment based on

9  special facts and circumstances.  Withrow v. Larkin, 421 U.S. 35, 46–47, 58 (1975).

10  The mere fact that a board denies relief in a given case or has denied relief in the

11  vast majority of cases does not demonstrate bias.  Stivers v. Pierce, 71 F.3d at 742.  This result is

12  because unfavorable judicial rulings alone are generally insufficient to demonstrate bias unless

13  they reflect such extreme favoritism or antagonism that the exercise of fair judgment is

14  precluded.  Liteky v. United States, 510 U.S. 540, 555 (1994).

15  Petitioner alleges that comments made by the BPH during the 2010 suitability

16  hearing demonstrate that they were not neutral.  In order to put these comments in context, the

17  undersigned first sets forth the circumstances of petitioner's offense, as summarized at the

18  beginning of the 2010 suitability hearing:

19  > December 15th, 1998 – and I believe this is pronounced Jaime, H, or J-A-I-M-E, Chavez, C-H-A-V-E-Z, was driving his van on the
20  > 91 Freeway with two passengers, Marco Martinez, M-A-R-T-I-N-E-Z, and Macario Toscano, T-O-S-C-A-N-O.  A white utility truck
21  > with three occupants, later identified as defendants, tried to enter the freeway by going in front of the van.  The driver of the utility
22  > truck, later identified as – and I'll spell the name – B-A-T-I-A-A-N-S, became angry with Chavez as he tried to merge.  Profanities
23  > were exchanged.  Bastiaans, then threw coffee into the van. Chavez followed the truck as he left the freeway and stopped for a
24  > red light at the intersection.  As Chavez gets out of the van, approached the truck, Bastiaans got out of the truck and the two
25  > started fighting.  M-A-R-R-E and Snyder – I'm not sure where M-A-R-R-E came from – I think that's – and Snyder, S-N-Y-D-E-R,
26  > joined the fight.  And Chavez fell to the ground from blows from

| | |
|---|---|
| 1 | the three defendants.  Chavez appeared to be unconscious while two other motorists, Justin Bohanan, B-O-H-A-N-A-N, and Robert Garcia, G-A-R-C-I-A, tried to break up the fight.  But Marre, —A-R-R-E, confronted them and kept them from intervening.  The two other defendants or all three of them kicked Chavez while he was on the ground.  Due to blows of the three defendants – due to the blows of the three defendants, Chavez ended up under a semi-tractor trailer truck that was also waiting at the intersection.  The light changed.  And the semi-tractor began moving forward, running over Chavez' midsection and proceeding a foot or 1 ½ feet before someone told the driver to stop. The defendant got back into the utility truck and sped away, the driver driving over the sidewalk to avoid the car that tried to block their escape, later going through a red light. They were apprehended while driving on the freeway.  Chavez sustained fractured ribs, collapse lung, lacerated liver, bruises about the head and face.  He was hospitalized for more than two weeks and was off work for a month. |

(Dkt. No. 1 at 105-07.)

Petitioner claims that the following comments, made by BPH Commissioner Prizmich when discussing the reasons the BPH found him unsuitable, demonstrate bias.  The undersigned has underlined those comments underlined by petitioner in the petition which he finds objectionable:

> And what leaves <u>me troubled</u> is what we spoke of towards the end of the hearing.  When given an opportunity to either avoid a hazardous situation for another person or try to rescue that person, it never even crossed your mind to go in and try to stop the fight. We talked about that today.  So, that's a very – that may not have been the choice that you should nor would make but it should have been a choice that crossed your mind just out of humanity sake. That should have been, <u>I mean</u>, it is.  Not that <u>I'm a shining</u> example, if <u>I saw someone</u> in dire straits, <u>my first reaction</u> is to try and go assist them in some way.  <u>Now, I may choose</u>, because of circumstances, not to follow through in that.  I may choose to do exactly what you say you would do, and that is to leave the area, you know.  But it would have been, in terms of that kind of question, <u>the kind of response I would have made.  I would have hoped that you would have made the same or similar kind of response</u>.  We didn't hear that...

(Dkt. 1-1 at 15-16.)

Petitioner argues that these comments demonstrate that Commissioner Prizmich improperly told petitioner that he would have to live up to Commissioner Prizmich's personal

4

standards in order to be found suitable for parole. (Dkt. 1 at 48.) Petitioner also argues that these comments demonstrate that petitioner will not be found suitable because he did not make the choices Commissioner Prizmich would have made. (Id.) Petitioner argues that these comments demonstrate that he was denied parole based on "whim" and "personal caprice." (Id.)

The comments set forth above were made by Commissioner Prizmich in response to petitioner's view that he would run away rather than help the victim if faced again with a similar situation. This view was reflected in comments by petitioner at the hearing.[1]

The following exchange took place between petitioner and the BPH:

Commissioner Iniguez: Just the one question, not necessarily about the crime, but I'm just trying to think about your mindset because you indicated that when you got out and you discharged from your last number, you got a job. You were paying your bills. You were doing everything to try and stay out of trouble. And then all of a sudden you're driving in this car and then something happens. What was your mindset then to make you want to get involved in that after you were working so hard to stay out of trouble? And how do you think that you're different now compared to that?

Petitioner: Well, that morning, everything happened so fast. And both the drivers, I wasn't driving. I was riding in back.

Commissioner Prizmich: Well, we don't want to talk about the

Petitioner: Right. So, I mean, my mindset then was, I think that I was just so loyal to the people that I was surrounded with, my boss and the other, that I didn't really take time out to analyze the bigger picture of the things that could happen. So, and now, I'm to the point where I'm a more humble person in the fact that I would not allow myself to get caught up in that. I would ask them to pull over and let me out. My loyalty would have to just take a step backwards and just get out of the vehicle if they were to start, if somebody was to start having that issue, because it was 6:30 in the morning. So, I mean, it wasn't like I really had a lot of time to really think about the – And not to minimize the scenario.

Petitioner's Attorney: Don't open up the can here.

Commissioner Iniguez: Again, you realize that a lot of things –

---

[1] At the beginning of the hearing, petitioner informed the BPH that he would not discuss the circumstances of the offense, so he did not comment directly on the offense.

|   |   |
|---|---|
| 1 | There are going to be those instances where you're going to have to make that, a split second decision one way or the other, you know. |
| 2 | And do you feel that you're capable of making that – |
| 3 | Petitioner: Sure. |
| 4 | Commissioner Iniguez  – correct decision in that – |
| 5 | Petitioner: Hopefully there's a phone or something where I could dial 911 or something to that effect. And like I said, if I even |
| 6 | thought it was getting to that point, if they were starting, I would ask the person I'm with, hey, please pull over, I need to get out. |
| 7 | You do what you're going to do, but I'm getting out. Need the phone, call 911, but I'm not going to the – There's no way. |
| 8 |   |
|   | Commissioner Iniguez: All right. Thank you. I have no other |
| 9 | questions. |
| 10 | Commissioner Prizmich:   Well, why wouldn't, as this thing unfolds, why wouldn't you jump in and try to assist the victim in |
| 11 | this case? I mean, they say, up yours, we ain't letting you out. We're taking care of this guy. Why wouldn't you try to help out the |
| 12 | victim? |
| 13 | Petitioner's Counsel: Hypothetically? |
| 14 | Commissioner Prizmich: Hypothetically, I mean, that was an option that you were clearly there, but your choice was to let me |
| 15 | out, I'm going to run away or get out of here. I don't want to be part of it. But you got a victim being pummeled, hypothetically. I |
| 16 | mean, it would seem to me that it would be unlikely that when emotions are jacked up that high that the two guys are duking it out |
| 17 | or about to duke it out that they're going to stop and let you leave so that you don't get involved in it. It seemed to me that they're |
| 18 | going to get into it with this guy, or at least one of them, and you've got a chance either to run away at that point or say I got to |
| 19 | try and stop this fight. But you didn't choose to stop the fight, hypothetically, you said, just let me out. You know what I mean? |
| 20 | So you got some guys – |
| 21 | Petitioner: Well, under the circumstances that we were under – |
| 22 | Commissioner Prizmich: Okay. |
| 23 | Petitioner:  – I had a chance to get out. I had a chance to get out and I didn't. |
| 24 |   |
| 25 | (Dkt. No. 1-1 at 3-4.) |
| 26 | //// |

1    The at-issue comments by Commissioner Prizmich, underlined above, do not demonstrate bias. Rather, the comments demonstrated a difficulty in understanding petitioner's suggestion that, if faced again with the same situation, he would run away rather than intervene to help the victim. These comments also demonstrated an inability to understand petitioner's suggestion that he regretted not running away when Chavez was attacked, but did not regret failing to intervene to stop the attack. Commissioner Prizmich's comments were meant to demonstrate the thought process of a reasonable person faced with the same situation, perhaps reflecting on the two men who did attempt to intervene to stop the fight.

   Petitioner further argues that Commissioner Prizmich wrongly stated, in the at-issue comments, that it did not cross petitioner's mind to help the victim. Petitioner argues that this statement was incorrect because petitioner had earlier stated that he would call 911. Petitioner's comments regarding the 911 call concerned what he would do if, in the future, he was faced with a dangerous situation. Petitioner's comments regarding the 911 call did not concern the circumstances of his conviction.

   Finally, petitioner cites the following additional comments made by Commissioner Prizmich in discussing the decision finding him unsuitable for parole as demonstrating bias. Again, the undersigned underlines those sections underlined by petitioner in the petition which he argues demonstrate bias:

> You couple that with a <u>very confusing state of mind that I'm left with</u> regarding you have a close friend who is an older man who is a minister. And you've known him since, <u>I think</u> you mentioned, he changed your diapers. And that was somebody that your mother went to. You seem very connected to that whole religious thing, yet you don't want to deal with AA and what you believe are religious steps. That makes no sense to me. <u>Now, that leaves me confused as to where you are</u>. <u>I said</u> in the last hearing, it's in your report, that you need further insight. And <u>I feel the same thing today</u>. <u>I don't feel</u> that you've done the <u>kind of work</u> regarding what your options were on that crime. <u>I looked</u> at your description of what occurred. And you pretty much minimize, <u>in terms of historic</u>, the beating that took place. <u>That's why I said</u> in the last hearing, and <u>I put it in the record</u>, that you needed further insight. That man was beat severely. Your comments today regarding what

7

1  his lifelong injuries were or even the injuries immediately
2  thereafter, "Well, he walked into the Courtroom without a cane. I
   think he was doing okay." That doesn't demonstrate a lot of
3  empathy or compassion for that individual. Those are some of the
   things we look at. Now, he may be okay. But combining that all
4  together, <u>I didn't see today where you have the kind of insight that
   I would have hoped you had since our last meeting</u>. If you want to
5  go to AA, we're not going to make you go. It's just that it's quite
   easy to get into either in prison or outside. If you choose to go
6  religious then please let us know what it is you're going to do
   because it's very important for you to stay away from drugs and
7  alcohol. That was made abundantly clear by the psychological
   evaluation. It's very important that you have some outlet, some
8  check and balance, some individual, like a sponsor or like a
   mentor, where you can go to and talk about how to handle life.
   You tend to be still very, you know, aggressive. <u>I happen to think
9  you – I like you</u>. You're an interesting guy to talk to. <u>But we need
   to have more</u> than just we like the guy sitting across the table. <u>We
10 need to know</u> that you have come to grips with this crime that you
   have taken full, without just saying, I take full responsibility –
11 You've said that a number of times. But <u>I don't</u> know what that
   means because <u>I didn't get that</u> either in the last hearing or here
12 today. <u>And I mentioned it in the last hearing. And I'm mentioning
   it again today. Somehow you've got to cross this table and let us
13 know</u> that you have indeed accepted all the components of
   responsibility, you have explored the options that you chose not to
14 take – instead, you went and joined the fray with this guy being
   pummeled and ultimately being run over by a tractor trailer – that
15 you've explored all that and that you have indeed come to grips
   with it. <u>Because we didn't get that sense here today</u>. <u>We got the
16 sense</u>, quite frankly, that you're doing well in prison. You're
   working well. You're very proud of yourself, and rightfully so,
17 that you got a GED. <u>I think that was a big step</u> forward for you.
   But you're going to need more self-help programming. Having
18 one or two Anger Management classes and saying that's good,
   that's all I need I don't need any more, <u>is just not enough</u>. You're
19 going to need to go to more. And if that means you got to sign up
   for more, you got to go to an AA class or you've got to do more
20 along those lines, then that's what you're going to have to do.
   Your work product is fine.
21
22 (Dkt. 1-1 at 16-19.)
23         Petitioner argues that the underlined comments above demonstrate that
24 Commissioner Prizmich improperly imposed what he personally thought, felt, hoped to see, or
25 what he didn't "get a sense of." (Dkt. 1 at 51.) The underlined comments, as well as the entire
26 section quoted above, do not demonstrate that Commissioner Prizmich was biased against

8

petitioner. Instead, it appears that petitioner went through the decision portion of the transcript and underlined Commissioner Prizmich's comments made in the first person or first person plural, and then claimed they demonstrated bias. In the underlined comments, Commissioner Prizmich explained why the BPH determined that petitioner was unsuitable. While he stated, for example, that *he* did not see that petitioner had sufficient insight, this clearly did not mean that he was personally biased against petitioner. The at-issue comments do not demonstrate an extreme antagonism or prejudgment of petitioner. In fact, in the section quoted above, Commissioner Prizmich stated that he *liked* petitioner.

Much of petitioner's argument alleging bias is really an attempt to "backdoor" an argument challenging the sufficiency of the evidence finding him unsuitable. This argument is foreclosed by the Supreme Court's decision in Swarthout v. Cooke, 131 S. Ct. 859, 862 (2011), which held that a petitioner is not entitled to relief so long as the petitioner received a meaningful opportunity to be heard and a statement of reasons why parole was denied, both of which he received herein.

For the reasons discussed above, claim one is without merit and should be dismissed.

B. Claim Two

Petitioner alleges that he was denied his right to a full and fair hearing because the standards used by the BPH to find him unsuitable are not specified by statute or regulation. In support of this claim, petitioner first argues that the BPH's finding of unsuitablity based on his failure to answer a question in a way the BPH would have answered it is not specified by statute or regulation. (Dkt. No. 1 at 54.) Petitioner cites a portion of the BPH decision quoted above, where the BPH stated that it was troubled by petitioner's failure to help the victim, suggesting that the BPH did not understand his explanation for his failure to intervene. (Id.) Petitioner argues that there is no regulation allowing the BPH to deny parole because petitioner did not give the kind of response the BPH hoped he would have given. (Id. at 55.)

9

Liberally construing this claim, petitioner appears to claim that Title 15, section 2402, of the California Code of Regulations, which governs parole suitability determinations, is unconstitutionally vague.

Generally, a regulation is void for vagueness "if it fails to give adequate notice to people of ordinary intelligence concerning the conduct it proscribes or if it invites arbitrary and discriminatory enforcement." United States v. Doremus, 888 F.2d 630, 634 (9th Cir. 1989). "[A] party challenging the facial validity of [a law] on vagueness grounds outside the domain of the First Amendment must demonstrate that the enactment is impermissibly vague in all of its applications." Hotel & Motel Ass'n of Oakland v. City of Oakland, 344 F.3d 959, 972 (9th Cir. 2003) (internal quotations omitted). Moreover, "[t]he Due Process Clause does not require the same precision in the drafting of parole release statues as is required in the drafting of penal laws." Hess v. Bd. of Parole and Post-Prison Supervision, 514 F.3d 909, 914 (9th Cir. 2008) (citing Glauner v. Miller, 184 F.3d 1053, 1055 (9th Cir. 1999)). The statute need only make a "principled distinction" between those who are suitable for parole and those who are not. Id.

Petitioner attempts to argue that section 2402 of Title 15 did not give adequate notice that he could be found unsuitable for parole for simply failing to answer a question in the manner that the BPH wished. In the section of the transcript cited by petitioner, he complains that the BPH did not like his explanations regarding why he failed to help the victim.

Section 2402(c)(1) of Title 15 permits the BPH to consider the circumstances of the commitment offense in parole suitability hearings. This section then goes on to list circumstances tending to show unsuitability, including whether the offense was carried out in a manner demonstrating a callous disregard for human suffering. Cal. Code Regs., tit. 15, § 2402(c)(1)(D). The BPH is also allowed to consider if the victim was abused, defiled or mutilated, or whether the motive for the crime was trivial in relation to the offense. Cal. Code Regs., tit. 15, § 2402(c)(1)(D) & (E). Overall, the undersigned finds that section 2402(c)(1) gives adequate notice to people of ordinary intelligence that the BPH may consider a petitioner's

failure to intervene to assist a victim in determining suitability.  Accordingly, this claim is without merit.

Petitioner next argues that he did not have adequate notice that the BPH could find him unsuitable for parole based on a lack of insight regarding the commitment offense. (Dkt. No. 1 at 56.)  Petitioner quotes portions of the BPH decision set forth above where the BPH commented on his lack of insight.  (Id.)  For example, petitioner cites the comments, "... you need further insight," and "I didn't see today where you have the kind of insight that I would have hoped you had since our last hearing."  (Id.)

The California Supreme Court recently found that "consideration of an inmate's degree of insight is well within the scope of the parole regulations."  In re Shaputis, 134 Cal.Rptr.3d 86, 107 (2011).  "The regulations do not use the term 'insight,' but they direct the Board to consider the inmate's 'past and present attitude toward the crime' (Regs., § 2402, subd. (b)) and 'the presence of remorse,' expressly including indications that the inmate 'understands the nature and magnitude of the offense' (Regs., § 2402, subd. (d)(3))."  Id.  Based on the language of § 2402(d)(3), the undersigned finds that this section gives adequate notice to people of ordinary intelligence that the BPH may consider a lack of insight in finding a prisoner unsuitable for parole.

For the reasons discussed above, claim two is without merit and should be dismissed.

### C.  Claim Three

Petitioner argues that the BPH conditioned his release on parole upon the requirement that he practice the religious steps of NA and AA.  Petitioner argues that this condition violated his First Amendment right to religious freedom.[2]

---

[2] Petitioner does not claim that the BPH improperly conditioned his parole on his attendance of NA or AA meetings.  At the hearing, petitioner did not object to attending NA and AA meetings.  Rather, the instant claim is based on the allegation that the BPH required that he

11

1      A condition of probation or parole requiring that probationer attend an AA or NA
2 program for recovery from substance abuse may violate the Establishment Clause. Inouye v.
3 Kemna, 504 F.3d 705, 713 (9th Cir. 2007).  For the following reasons, the undersigned finds that
4 the BPH did not condition petitioner's release on parole on his practice of the religious steps of
5 AA and NA.
6      At the 2010 suitability hearing, the BPH noted that petitioner had attended AA
7 and NA. (Dkt. 1 at 143.)  Petitioner told the BPH that he was currently on a waiting list for AA.
8 (Id. at 147.)  Later in the hearing, the BPH discussed with petitioner his working of the 12 steps:

>   Commissioner Prizmich: So, do you have a higher power at all?
>   Did you get into that at all?
>
>   Petitioner: As far as Christianity?
>
>   Commissioner Prizmich: Whatever.  Higher power can be
>   whatever you choose.  Do you have one?  Did you go through any
>   of that or was that –
>
>   Petitioner: Not really, not really.  It's more of like a religion basis
>   is how I understood it –
>
>   Commissioner Prizmich: All right.
>
>   Petitioner:  – as I was reading on it.
>
>   Commissioner Prizmich: Okay.  Ms. Beck?
>
>   Deputy District Attorney Beck: On that vein, is there a step that
>   inmate has not accomplished at this point?
>
>   Commissioner Prizmich: Well, he didn't do the one that dealt with
>   God.  I think that's step two.
>
>   Petitioner's Counsel: He's not required to do that –
>
>   Commissioner Prizmich: No, he's not.
>
>   Petitioner's Counsel:  – under the law.
>
>   Commissioner Prizmich: I'm just saying, but the question was is
>   there a step that you haven't done.

---

practice the religious steps of these programs.

1   Petitioner: No, I mean, there's a few of them that are really surrounded by religious, and –

2   Commissioner Prizmich: Well, okay. Ma'am?

3   Deputy District Attorney Beck: Okay. And which steps are they?

4   Commissioner Prizmich: Which steps haven't you done?

5   Petitioner: If you want me to refer, I mean, because I do –

6   Commissioner Prizmich: Yeah, go ahead.

7   Petitioner:  – I do keep a –

8   Commissioner Prizmich: Okay. So, which ones do you think you haven't done?

9   Petitioner: Well, the ones that are most common as far as –

10   Commissioner Prizmich: No, I want the ones – she's asking about the ones that you haven't done.

11   Petitioner: The ones that are religious, two –

12   Commissioner Prizmich: Say those.

13   Petitioner: Three is a very religious type background. Five is very religious. Six, again, we're speaking we have God remove all these defects of our character. It's a religious scenario.

14   Commissioner Prizmich: Okay. So, I think two, five and six, is that what you said?

15   Petitioner: Yes. I grew up in a church. I mean, as you can see, I got a letter of –

16   Commissioner Prizmich: Right.

17   Inmate Snyder:  – from a Reverand.

18   Commissioner Prizmich: So, religious is a problem for you or –

19   Petitioner: It's not a problem for me, no.

20   Commissioner Prizmich: But for the steps they are a problem?

21   Petitioner: But for the steps, I mean –

22   Commissioner Prizmich: Okay. All right. Ma'am?

(Dkt. 1 at 171-74.)

In the section above discussion claim one, the undersigned set forth statements by Commissioner Prizmich expressing confusing regarding petitioner's religious views. (Dkt. 1-1 at 16.) Commissioner Prizmich stated,

> You seem very connected to that whole religious thing, yet you don't want to deal with AA and what you believe are religious steps. That makes no sense to me. Now, that leaves me confused as to where you are.

(Dkt. 1-1 at 16-17.)

The BPH did not state that petitioner would have to embrace the religious steps of AA or NA to be found suitable for parole. None of the BPH's comments can be construed as requiring petitioner to do so. In fact, during the discussion set forth above, Commissioner Prizmich acknowledged that petitioner was not legally required to practice those steps if it offended his religious beliefs.

In the comments set forth immediately above, Commissioner Prizmich expressed confusion regarding petitioner's objections to practicing the religious steps. This confusion was not unreasonable, as petitioner did not clearly articulate his objection to the religious steps, had a minister as a close friend, and also stated that religion was not a problem for him. This expressed confusion by Commissioner Prizmich did not indicate that petitioner was required to practice the religious steps in order to be found suitable for parole. Instead, the comments suggested that petitioner would have to better explain at his next suitability hearing his reasons for not working on the religious steps.

For the reasons discussed above, claim three is without merit and should be dismissed.

D. Claim Four

Petitioner argues that the BPH ordered his next suitability hearing in three years based on California Penal Code § 3041(b)(3). Petitioner argues that this Penal Code section does

not exist.

In finding petitioner entitled to another suitability hearing in three years, Commissioner Prizmich stated,

> So, based upon Penal Code Section 3041(b)(3) and after giving consideration to the victim's safety as well as the public safety and giving consideration to Title 15, a three year denial is what you'll get.

(Dkt. 1-1 at 21-22.)

California Penal Code § 3041.5(b)(3) sets forth the factors the BPH should consider when determining when a prisoner's next parole suitability hearing should be held. At petitioner's 2010 suitability hearing, Commissioner Prizmich obviously meant to refer to § 3041.5(b)(3) when he mentioned § 3041(b)(3). This immaterial misstatement does not state a colorable claim for a constitutional violation.

For the reasons discussed above, claim four is without merit and should be dismissed.

Accordingly, IT IS HEREBY ORDERED that petitioner's motion to proceed in forma pauperis (Dkt. No. 2) is granted;

IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be dismissed pursuant to Rule 4 of the Rules Governing Section 2254 Cases.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, petitioner may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §

2253(c)(3).  Petitioner is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 7, 2012

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

sn3064.157